IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITY OF LANCASTER, | : | |
| Appellant, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHELL'S DISPOSAL AND | : | |
| RECYCLING, INC., | : | No. 12-4498 |
| Appellee. | : | BANKRUPTCY APPEAL |

### MEMORANDUM

Schiller, J.                                                                          January 3, 2013

The City of Lancaster ("City") appeals a Bankruptcy Court order confirming the Third Am\ended Plan of Reorganization of Shell's Disposal and Recycling, Inc. ("Debtor"). For the reasons that follow, the Court affirms the decision of the Bankruptcy Court.

### I.    BACKGROUND

Debtor is a Pennsylvania hauling and recycling business, of which the president and sole shareholder is Willie Shell, Sr. (R. at Ex. 7 [Bankruptcy Confirmation Tr.] at 18-19.) Debtor filed for Chapter 11 bankruptcy on August 23, 2010, and listed the City as having an unsecured nonpriority claim for $235,000 on its Amended Schedule F. (Voluntary Pet.; Am. Schedule F.) Debtor filed monthly operating reports from August 2010 through May 2012. (R. at Ex. 5 [Monthly Operating Reports].) Debtor filed a plan of reorganization on May 3, 2011, and an amended plan of reorganization on February 20, 2012.

The City states that it filed an additional unsecured claim on March 1, 2012 for $301,500 in rejection damages arising out of Debtor's rejection of a prior settlement agreement with the City. (Appellant's Br. at 5; see Bankruptcy Confirmation Tr. at 50.) The enforceability of this settlement

agreement was the subject of ongoing litigation between the parties at the time the Bankruptcy Court confirmed the plan that is the subject of this appeal. The Third Circuit has since concluded that the agreement is enforceable. *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, App. A. No. 12-1730, 2012 WL 5816870 (3d Cir. Nov. 16, 2012). As a result, the City's claim against Debtor for rejection damages remains valid, though its status was uncertain at the time of the confirmation hearing.

On April 19, 2012, Debtor filed a second amended plan, which provided for payment of Debtor's secured claims within two years of the date of confirmation of the plan, payment of unsecured priority claims within three years of confirmation, and payment of unsecured nonpriority claims within five years of confirmation. (*See* R. at Ex. 9 [Second Am. Plan].) The IRS, the Commonwealth of Pennsylvania Department of Revenue, and the City filed objections. (Appellee's Br. at 5.)

The Bankruptcy Court held a confirmation hearing on the second amended plan on June 19, 2012. At the hearing, Shell testified that Debtor engaged in advertising efforts and was a minority-owned business enterprise, which helped Debtor to attract business. (Bankruptcy Confirmation Tr. at 27, 42.) Shell also stated that Debtor was up-to-date on its taxes and its workers compensation payments. (*Id.* at 20, 35.) Shell acknowledged that Debtor's lawyer had agreed to defer his compensation and would not require payment immediately upon confirmation and that Shell had not been taking a salary during the bankruptcy period. (*Id.* at 31, 32.)

On June 21, 2012, Debtor filed the Debtor-in-Possession's Third Amended Plan of Reorganization ("Plan"), which made a "technical amendment" to the second amended plan but otherwise retained its structure. (Appellee's Br. at 6; *see* R. at Ex. 10 [Third Am. Plan].) The

Bankruptcy Court confirmed the Plan in an order dated June 26, 2012. (R. at Ex. 2 [Order Confirming Plan].) The City appeals the Bankruptcy Court's confirmation of the Plan.

## II.    STANDARD OF REVIEW

District courts have jurisdiction over appeals from final bankruptcy court orders. 28 U.S.C. § 158(a). A district court reviewing a bankruptcy court's decision has plenary review over the bankruptcy court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999); *Computer Personalities Sys., Inc. v. Aspect Computer*, 320 B.R. 812, 816 (E.D. Pa. 2005). "Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *see also In re Nelson Co.*, 959 F.2d 1260, 1263 (3d Cir. 1992). "A factual finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Matters left to the discretion of the bankruptcy court judge are reviewed for abuse of that discretion. *In re Martin's Aquarium, Inc.*, 98 F. App'x 911, 913 (3d Cir. 2004). An abuse of discretion exists if the "court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) (citation omitted).

### III. DISCUSSION

The City argues that the Plan should not have been confirmed because Debtor did not prove the Plan was feasible under 11 U.S.C. § 1129(a)(11). "Feasibility is a factual question subject to the clearly erroneous standard of review." *Corestates Bank, N.A. v. United Chem. Techs., Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996) (citations omitted). Under § 1129(a)(11),

> The court shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

To fulfill the feasibility requirement, "the plan must be 'reasonably likely [to] succeed[] on its own terms without a need for further reorganization on the debtor's part.'" *In re Am. Capital Equip.*, 688 F.3d 145, 156 (3d Cir. 2012) (quoting *In re Applied Safety, Inc.*, 200 B.R. 576, 584 (Bankr. E.D. Pa. 1996)) (alterations in original). "However, it is not necessary for plan success to be guaranteed, nor is the feasibility requirement generally viewed as rigorous." *Applied Safety*, 200 B.R. at 584 (citation omitted). Rather, the debtor must show "reasonable prospects of financial stability and success." *Corestates Bank*, 202 B.R. at 45 (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1991)).

The City contends that the Bankruptcy Court committed clear error because it believed that Debtor's unsecured claims totaled only $50,000, instead of the $573,586.05 listed on the Amended Schedule F. The City draws this conclusion based on an exchange between the Bankruptcy Court and counsel for Debtor at the confirmation hearing, in which the Bankruptcy Court asked, "How much is the unsecured claims?" (Bankruptcy Confirmation Tr. at 80.) Debtor's counsel responded that they are "[a]pproximately $50,000," and the Bankruptcy Court said, "Okay." (*Id.*) Debtor posits that the $50,000 referred instead to the unsecured portion of the IRS's tax claims against Debtor. In

4

context, it is more likely that the $50,000 represented the total of the three secured claims against Debtor provided for in the Plan, which add up to $50,796.71. (*See* Third Am. Plan at 3.) Counsel had stated that "the secured claims would be paid in full within a year" almost immediately before the Bankruptcy Court interjected and asked about the amount of the unsecured claims. (Bankruptcy Confirmation Tr. at 79-80.) It is thus plausible that counsel thought the Bankruptcy Court was asking about the amount of the secured claims to verify counsel's statement that these claims would be paid in full within a year.

In any event, this Court need not speculate as to what the $50,000 mentioned by counsel at the hearing actually represented, as there is ample evidence that the Bankruptcy Court did not rely on that incorrect figure to determine that Debtor would be able to pay off its unsecured creditors. The discussion at the confirmation hearing shifted immediately, and the Bankruptcy Court did not mention the $50,000 figure again. Moreover, Debtor's Amended Schedule F, which lists the creditors with unsecured nonpriority claims against Debtor, enumerated three such claims totaling $573,586.05. (Am. Schedule F.) In fact, the Bankruptcy Court stated that when Debtor "commence[d] paying the unsecured creditors 100 percent[, i]f I take [the profits] at 60,000 a year, it's going to take him five years to pay off the City of Lancaster." (*See* Bankruptcy Confirmation Tr. at 86-87.) Based on this calculation, the Bankruptcy Court could not have believed that the unsecured claims totaled only $50,000. The Bankruptcy Court thus understood that the unsecured claims against Debtor's estate exceeded $50,000 when it confirmed the Plan based on its finding that the Plan was feasible.

The City also argues that Debtor has inadequate cash flow to pay its creditors in accordance with the Plan and that the financial projections Debtor provided have no basis. The City notes, for

example, that Debtor's projections included $500,000 in new government contracts for 2012 that had not yet come to fruition at the time of the hearing and that Debtor's revenues overall were projected to nearly double from 2011. (Appellant's Br. at 6-7; Bankruptcy Confirmation Tr. Ex. A [Financial Projections].) However, the Bankruptcy Court did not rely on these projections in finding that Debtor would be able to pay off its creditors within the time allotted by the Plan. Rather, the Bankruptcy Court calculated that, even based on Debtor's monthly profit during bankruptcy without the new business Debtor predicted, Debtor would be able to pay its creditors' claims in a timely fashion.

Although this Court does not adopt the view that Debtor could pay its creditors in full even without new business, this Court finds the Plan feasible. The City is correct that Debtor projected significant improvements in its performance in future years. Yet Shell's testimony explained that Debtor's past performance would not accurately predict future results because Debtor's ability to bid on contracts in 2011 had been constrained by the reorganization, which led Debtor to expand more cautiously. (Bankruptcy Confirmation Tr. at 39-40.)

In his testimony, Shell also provided reasons that he could be confident that Debtor's business would turn trash into treasure. Shell testified that Debtor benefits from its status as a minority-owned business enterprise and that this status "guarantees that [Debtor] will receive bids from the government." (*Id.* at 42.) Debtor advertises by means of mailings, flyers, and the phone book, and, although in June Debtor had not yet attained the $80,000 in new commercial and residential business it was projecting for 2012, it had won four new commercial contracts at the time of the confirmation hearing. (*Id.* at 27, 43.) Although Debtor had not secured any new government contracts at the time of the hearing, Debtor explained that invitations to bid on government contracts were usually not sent out until August and September. (*Id.* at 26.)

Neither Debtor, nor the Bankruptcy Court, nor this Court can guarantee Debtor's success after its reorganization, but that is not the standard required to satisfy § 1129(a)(11). The Plan had reasonable prospects of success, and the Bankruptcy Court did not commit clear error in finding the Plan feasible.

## IV.    CONCLUSION

Because the Bankruptcy Court did not err in finding that the Plan was feasible, the order of the Bankruptcy Court is affirmed. An Order consistent with this Memorandum will be docketed separately.